# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 18-CR-228-JPS |
| WAYNE D. GRILLS, | **ORDER** |
| Defendant. | |

**1.    PROCEDURAL BACKGROUND**

On March 18, 2022, Defendant Wayne D. Grills ("Defendant") moved for compassionate release. ECF No. 81. On October 3, 2022, he filed a motion to amend his motion for compassionate release. ECF No. 83. On October 7, 2022, the Court referred the matter to Federal Defender Services ("FDS"). ECF No. 84. On October 21, 2022, FDS indicated that it would not file a supplement to the motion. ECF No. 85. Accordingly, on October 25, 2022, the Court ordered the Government to respond. ECF No. 86.

The Government filed its response on November 10, 2022. ECF No. 87. Defendant thereafter moved to appoint counsel. ECF No. 88. On January 3, 2023, Defendant filed a purported motion for summary judgment on his motion for compassionate release.[1] ECF No. 89. The Court denied that motion on January 12, 2023, ECF No. 91, which prompted an unsuccessful

---

[1] In this filing, Defendant informs the Court that he never received the Government's response to his motion. In light of this, the Court ordered the Government to mail a copy of its response to Defendant and file a certificate of service to that effect. ECF No. 91. The Court also afforded Defendant additional time to reply to the Government's response.

appeal by Defendant to the Seventh Circuit, ECF Nos. 93–95.[2] In the interim, Defendant filed a motion for an extension of time, ECF No. 96, which appears to have been mooted by his March 28, 2023 reply, ECF No. 97. These motions are now before the Court.

The Court will grant Defendant's motion to amend, which more appropriately can be characterized as a provision of supplemental medical records. ECF No. 83. But for the reasons discussed herein, the Court will deny Defendant's remaining motions, including his motion for appointment of counsel and his motion for compassionate release.

## 2.    MEDICAL AND HEALTH FACTS

Defendant is sixty years old and has a scheduled release date of March 21, 2031. ECF No. 81 at 2.[3] After Defendant pled guilty to Count One of a Superseding Indictment (kidnapping in violation of 18 U.S.C. § 1201(a)(1)), this Court sentenced him on February 21, 2020 to a total term of imprisonment of 180 months, to be followed by a five-year term of supervised release. ECF Nos. 49, 53, 63, 81 at 2.

Defendant submitted a request for compassionate release to the warden of his institution on November 30, 2021. ECF No. 81 at 3. That request was denied on January 26, 2022. *Id*. Indeed, Defendant provided the "Response to Request for Reduction in Sentence," dated January 26, 2022, which acknowledges that Defendant submitted a request for reduction of sentence based on "inmates with a debilitating medical condition," but

---

[2]The Seventh Circuit dismissed the appeal for lack of jurisdiction on April 27, 2023. *United States v. Grills*, No. 23-1235 (7th Cir.). ECF No. 99.

[3]At the time of the filing of Defendant's motion for compassionate release, he was incarcerated at Milan FCI in Milan, Michigan. ECF No. 81 at 7. Defendant now represents that he has an "elderly release date of June 9th, 2028." ECF No. 97 at 6.

which states that the institution would not be pursuing a compassionate release request on Defendant's behalf. ECF No. 81-4 at 3.

As grounds for compassionate release, Defendant asserts that he has fallen into "grave physiologic and cardiologic disrepair." ECF No. 81 at 6. He has gained over 70 pounds and claims to have a Body Mass Index of over 50. *Id*.[4] He is classified as obese, weighing approximately 250 pounds. ECF No. 81-4 at 4; ECF No. 83-2 at 23. He suffers from asthma, chronic obstructive pulmonary disease, chronic pain, and hypertension headaches, and he needs a total replacement of his left hip. ECF No. 81 at 6. He also contracted COVID-19 in 2020. ECF No. 81-4 at 41. His medical records indicate that he has since been vaccinated. ECF No. 83-2 at 10.

Defendant's chronic pain stems in part from an incident in which Defendant, at seven years old, was hit by a car going over 80 miles per hour. ECF No. 81-4 at 8. The vehicle was being pursued in a high-speed chase and hit Defendant. *Id*. The incident required Defendant's hospitalization for six months. He suffered head trauma, sustained a broken femur, and was put into a lower body cast for six months. *Id*. The broken femur healed incorrectly, and Defendant's medical records now document it as "[o]ld healed fracture deformity proximal to mid shaft left femur." *Id*. at 52.

Also contributing to Defendant's poor condition are various other incidents from adulthood. At age 34, Defendant broke his coccyx following a slip and fall. *Id*. at 8. This incident also caused a compression fracture of his thoracic vertebrae at T-5 and seriously damaged his sacro-iliac joint on his left hip. *Id*. At age 43, a motorcycle accident left Defendant with a

---

[4]*But see* ECF No. 83-2 at 5, 8 (BMI recorded at 37 or 39 as of April 20, 2022). Regardless of whether Defendant's BMI is 50 or 37, he falls within the range of obesity. *See* https://health.clevelandclinic.org/bmi-for-men/ (Oct. 29, 2021).

dislocated knee, torn quadriceps and hamstring, and a nearly dislocated hip. This further strained the joint in his left hip, as well as tearing his piriformis tendon. *Id*.

In 2021, Defendant suffered a slip and fall in the shower at a transfer facility. *Id*. He fell into a "splits" position and heard a pop in his groin area. *Id*. Defendant has also identified various lumps on his back which concern him. *See id.* at 13 ("I have foumd [sic] a lump on the left side of my lower back, When I touch it I have alot [sic] of pain."), at 16 ("Since my last visit I have found a second lump growing on my lower back, Im [sic] in a lot of pain and can hardly walk with my cane . . . ."), and at 47 ("I recently discovered a number of Lumps on my Lower Back that are aggravating the Sciatic Nerve causing pain and numbness in my Back and Legs."). These lumps, and his ailments generally, additionally prevent him from getting proper sleep. *Id*. at 22.

As a result of these ailments, Defendant is generally bedridden and is at higher risk for stroke, heart attack, and COVID-19. ECF No. 81 at 6. He suffers from leg and back pain and sometimes can't feel his legs, which makes movement difficult. ECF No. 81-4 at 8. He requires the use of a cane. *Id*. at 30. Defendant's conditions have also exacerbated his anxiety and depression, which in turn exacerbate his chronic pain, hypertension, and risk of stroke or heart attack. *Id*. Defendant finds himself in a vicious cycle in which he feels his days are "numbered." ECF No. 81 at 6.

Defendant has persistently sought medical assistance and physical rehabilitation over the last several years. He has urged BOP officials to address his conditions "before [he] become[s] permanently disabled." ECF No. 81-4 at 10. He has diligently pursued treatment for his conditions. His ailments and the associated treatments are thoroughly documented.

Page 4 of 15
Case 2:18-cr-00228-JPS   Filed 05/22/23   Page 4 of 15   Document 100

Defendant represents that he has at times gone several weeks without necessary prescriptions. *See id*. at 25. He has had mixed success with some of the treatment he has received to date. *See id*. at 27 (noting that Defendant had been on medication for six weeks without amelioration of symptoms). However, Defendant has at times refused the medication offered to him. *See* ECF No. 83-2 at 24 ("Offered duloxetine and he stated that he refused to take 'psych meds' for pain. Advised the pt that this medication is indicated for pain . . . . He refused the meds that I offered. Will continue tylenol and naproxen.").

In addition to pharmacological intervention (albuterol inhaler, pain medication, blood pressure medication), Defendant has been provided medical shoes, a cane, and a shower chair, and has been placed in housing on a ground floor in a lower bunk. ECF No. 81-4 at 42; ECF No. 83-2 at 26. Defendant's cellmate attests to putting on and taking off Defendant's shoes and socks each day, as Defendant cannot do these things himself. ECF No. 81-4 at 55. His cellmate also confirms that Defendant cannot stand, sit, or walk for extended periods of time, which forces Defendant to be bedridden much of the day. *Id*.

The institutions at which Defendant has been placed have acknowledged the severity of his conditions. *See id*. at 31 (documenting severe osteoarthritis in left hip), at 34 (documenting abnormal lab work and Defendant's status as prediabetic) and at 40 (documenting diagnosis of major depressive disorder, asthma, hypertension, chronic periodontitis, osteoarthritis, low back pain, and prediabetes). The BOP referred Defendant to a hospital in December 2021, and the physician there confirmed the various diagnoses and ailments identified by Defendant. ECF No. 83-2 at 2. Medical documentation from April 2022, provided in the

supplement filed at ECF No. 83, demonstrates that these issues have not resolved themselves since the filing of Defendant's motion for compassionate release. These documents indicate that Defendant's already high BMI will only continue to increase, as Defendant is unable to engage in physical activity. *Id*. at 8. They also confirm that Defendant requires a hip replacement, but state that his classification as obese may bar that possibility. *Id*. at 9. The target date for Defendant's left hip replacement is listed as July 19, 2022, *id*. at 21, and as of June 30, 2022, Defendant's records indicate he was scheduled for "transfer for hip surgery." *Id.* at 24.

Defendant also asserts that he has had "no disciplinary issues" during his incarceration and has participated in "constructive educational programming." ECF No. 81 at 6. In support of this assertion, he has attached his education records and certificates of course completion. *See* ECF No. 81-4 at 5–7. He also asserts that he is at "Low Risk for Violence and Recidivism." ECF No. 81 at 6.

### 3. MOTION FOR APPOINTMENT OF COUNSEL

28 U.S.C. § 1915(e)(1) authorizes the court to "request an attorney to represent any person unable to afford counsel." The decision whether to grant a request for counsel is a discretionary one. *James v. Eli*, 889 F.3d 320, 326 (7th Cir. 2018).

In evaluating such a request, district courts are required to consider both "the difficulty of the case and the pro se plaintiff's competence to litigate it himself." *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007). Ultimately, "the question is whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Id.* at 655. A pro se litigant must not only provide the Court an explanation on these points, but he

must also "offer reasons why counsel should be appointed that are not common to many other *pro se* litigants." *See Young v. MilliporeSigma*, No. 18-cv-432-JPS, 2018 U.S. Dist. LEXIS 198281, at *2 (E.D. Wis. Nov. 21, 2018) (citing *Bracey v. Grondin*, 712 F.3d 1012, 1017–18 (7th Cir. 2013)); *Pruitt*, 503 F.3d at 656 (observing that the Seventh Circuit has "resisted laying down categorical rules regarding recruitment of counsel in particular types of cases"); *Harper v. Bolton*, 57 F. Supp. 3d 889, 893 (N.D. Ill. 2014). The district court is also to inquire as to whether "the indigent plaintiff made a reasonable attempt to obtain counsel or [has] been effectively precluded from doing so[.]" *Pruitt,* 503 F.3d at 654. A court may also consider the litigant's "literacy, communication skills, educational level, and litigation experience," as well as any information bearing on "the plaintiff's intellectual capacity and psychological history." *Id.* at 655.

In requesting counsel, Defendant provides only that he has no assets. ECF No. 88 at 2. He writes that he made a diligent effort to contact the Federal Defender Office of Wisconsin to acquire counsel, but it was the Court, not Defendant, that referred this matter to FDS. *Id*. at 1; ECF No. 84. Defendant does not attest to having attempted to contact any other attorneys, firms, or legal aid organizations. Nor does he explain why he is incapable of litigating this matter himself.

The Court is satisfied that Defendant is indigent and cannot afford an attorney, but that is insufficient to warrant the appointment of counsel. Defendant has not demonstrated that he has made a reasonable attempt to acquire counsel, nor has he demonstrated that he is precluded from doing so. The Court must deny Defendant's motion.

## 4. MOTION FOR COMPASSIONATE RELEASE

### 4.1 Standards

The Court can modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or thirty days after the warden at the defendant's facility has received such a request for release, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). There must also be "extraordinary and compelling reasons warrant[ing] such a reduction[.]" *Id.* § 3582(c)(1)(A)(i).

While § 3582(c)(1)(A) instructs that a reduction must also be "consistent with applicable policy statements issued by the [United States] Sentencing Commission," this circuit has held that the relevant policy statement, U.S.S.G. § 1B1.13, is inapplicable to prisoner-initiated motions for compassionate release. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Therefore, a court has discretion when determining what constitutes an "extraordinary and compelling" reason warranting compassionate release. *Id.* ("[T]he trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement."). A district court may also "make the same determinations that would normally be left to the Director of the Bureau of Prisons [under the catchall provision at U.S.S.G. § 1B1.13 n.1(D)]." *United States v. Brown*, No. 01-CR-196-JPS, 2020 WL 4569289, at *4 (E.D. Wis. Aug. 7, 2020). Yet, this Court will evaluate prisoner-initiated motions for compassionate release with due regard for the guidance provided in § 1B1.13 because it "provide[s] a working definition of 'extraordinary and compelling reasons' . . . [which] can guide discretion without being conclusive." *Gunn*, 980 F.3d at 1180; *see also United States v. Mays*, No. 1:08-

cr-00125-TWP-DML, 2020 WL 7239530, at *3 (S.D. Ind. Dec. 9, 2020) (evaluating compassionate motions brought under the "extraordinary and compelling" prong of § 3582(c)(1)(A) with "due regard" for § 1B1.13).

The commentary to the Sentencing Guidelines explains that "extraordinary and compelling reasons exist" when "[t]he defendant is suffering from a terminal illness, (i.e., a serious and advanced illness with an end of life trajectory)," such as cancer or advanced dementia. U.S.S.G. § 1B1.13 n.1.(A)(i). The commentary also considers a defendant's medical condition to be an extraordinary and compelling reason if:

> [t]he defendant is suffering from a serious physical or mental condition, suffering from a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 n.1.(A)(ii).

Prior to modifying a term of imprisonment, the Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a), if applicable. 18 U.S.C. § 3582(c)(1)(A).

### 4.2 Application

#### 4.2.1 Extraordinary and Compelling Reason

Although his positive COVID-19 diagnosis was several years ago and Defendant has since been vaccinated, Defendant is still concerned about his risk for re-contraction of COVID-19, as well as his risk for stroke and heart attack, in light of his extensive medical conditions.

The outbreak of COVID-19, together with underlying medical conditions that place a defendant at "high risk" should he contract the disease, may establish an extraordinary and compelling reason warranting

release. *See, e.g., United States v. Gonzales*, No. 13-CR-101-JPS, 2020 WL 4437154, at *4 (E.D. Wis. Aug. 3, 2020). However, the risk calculus has changed significantly given the introduction of vaccines that inoculate against COVID-19. On August 23, 2021, after rigorous and thorough evaluation, the Food and Drug Administration approved the Pfizer-BioNTech COVID-19 vaccine for all individuals aged 16 years and older.[5] Other vaccines, including the Moderna vaccine, have been approved for emergency use since late 2020, with great success.[6]

It quickly became the law in the Seventh Circuit that, "for most prisoners[,] the availability of vaccines for COVID-19 'makes it impossible to conclude that the risk of COVID-19 is an "extraordinary and compelling" reason for immediate release.'" *United States v. Sullivan*, No. 20-2647, 2021 WL 3578621, at *2 (7th Cir. Aug. 13, 2021) (quoting *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)); *see also United States v. Burgard*, No. 20-3210, 2021 WL 3781384, at *2 (7th Cir. Aug. 26, 2021); *United States v. Eveland*, No. 20-3449, 2021 WL 3414202, at *1 (7th Cir. Aug. 5, 2021); *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021).

However, Defendant's motion for compassionate release is based not solely on the risk of COVID-19. More concerning to Defendant are his above-described, extensive medical ailments that cause him pain, limit his mobility, and are at the point of requiring surgical intervention.

---

[5]FDA News Release, U.S. Food & Drug Admin., FDA Approves First COVID-19 Vaccine (Aug. 23, 2021), https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine.

[6]*See* U.S. Food & Drug Admin., Moderna COVID-19 Vaccine (updated Aug. 18, 2021), https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/moderna-covid-19-vaccine.

The Government argues that Defendant's medical conditions, while serious, are insufficient to constitute an extraordinary and compelling reason for release. It is true that Defendant's conditions are not classified as terminal, but the Government somewhat mischaracterizes and minimizes Defendant's conditions. For example, the Government asserts that Defendant has not tested positive for COVID-19 while incarcerated, but this assertion is contradicted by the medical records. *See* ECF No. 81-4 at 41 ("Confirmed case COVID-19 . . . 10/28/2021 . . . Quest test positive 7/30/20. Just resulted today 8/10/20 . . . Quarantine . . .").

The Government also writes that Defendant's Proposed Release Plan indicates "that he only requires assistance putting on his shoes and socks and does not require assistance with any self-care such as bathing, walking, or toileting." ECF No. 87 at 6. This is not quite an accurate characterization of Defendant's physical status and abilities as demonstrated in Defendant's medical records. Defendant is unable to put on his socks or shoes without assistance, but he also has limited mobility in walking, bending, and similar movement. He requires the use of a cane and special shoes for mobility and the use of a shower chair for bathing. He is housed on a lower floor and a lower bunk, presumably because he cannot safely ascend stairs regularly.

The Government also references the planned hip surgery for the proposition that Defendant is receiving the care he needs. ECF No. 87 at 7 (citing ECF No. 83-2 at 24). As noted previously, the target date for Defendant's hip replacement was July 2022. ECF No. 83-2 at 21 ("Consultation/Procedure Requested: Orthopedic Surgery . . . Priority: Routine . . . Target Date: 07/19/2022."). At the time of the Government's response on November 10, 2022, there is no indication in the record as to whether Defendant has received that surgery.

However, despite all this, the Court need not decide whether Defendant's medical circumstances constitute an extraordinary and compelling reason for release. That determination is ultimately immaterial because the Court is additionally obliged to consider the factors set forth in 18 U.S.C. § 3553(a), and consideration of those factors demonstrates that Defendant is unequivocally unfit for compassionate release.

### 4.2.2 Sentencing Factors

The analysis of this motion ultimately turns on the Court's consideration of the sentencing factors. Prior to modifying a term of imprisonment, the Court is obligated to consider the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A). These factors include the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public, and (4) provide the defendant with effective training, care, and/or treatment. Even a brief consideration of these factors demonstrates that compassionate release is entirely inappropriate in this case.

A discussion of Defendant's extensive criminal history, and the specific offense for which he is presently incarcerated, becomes necessary. The following facts are drawn from the Revised Presentence Investigation Report prepared in advance of Defendant's sentencing, ECF No. 55, unless otherwise noted. At around 3 A.M. on June 9, 2018, Defendant—armed with a gun—went to the house of his ex-girlfriend ("A.L.K.") where she resided with her children. Prior to this uninvited interaction, Defendant had been harassing A.L.K. by phone, calling her forty-five times one day in October 2017. He harassed her by other means as well, such as by sending nude

Page 12 of 15
Case 2:18-cr-00228-JPS   Filed 05/22/23   Page 12 of 15   Document 100

photos of her to her relatives and to others in the community. ECF No. 71 at 16. He was frequently cited by police for these instances of harassment, but the citations did not deter him.[7]

Defendant woke up A.L.K. and forced her out of her home. Her children witnessed this, and Defendant threatened to kill them if A.L.K. didn't go with him. Defendant then drove A.L.K. and himself across state lines to Illinois. At one point, Defendant forced A.L.K. into the back of the vehicle, where he raped her. Once in Illinois, Defendant tried to conceal A.L.K. in his garage. When she attempted to flee on foot, he pursued her and continued to threaten her. Defendant was then apprehended by police. A.L.K. fully believes that had he not been apprehended at that time, he would have killed her that night. ECF No. 71 at 29.

This violent crime is not the first perpetrated by Defendant. His criminal records demonstrate an extensive history of theft, violence, drug abuse, and general disregard for the law and for others. He has been arrested at one time or another for grand larceny, domestic battery, armed robbery, burglary, assault, and harassment among various other crimes.

To date, Defendant has served little of this Court's 180-month sentence for his 2018 kidnapping charge. And as A.L.K. correctly noted at Defendant's sentencing hearing, this was a "violent act and not his first one." ECF No. 71 at 31. Defendant has given the Court little reason to believe that he will not commit, or attempt to commit, further offenses.

Every sentencing factor compels denial of Defendant's motion for compassionate release. The crimes for which this Court sentenced him in

---

[7]This recitation of events belies Defendant's disingenuous assertion that his conviction resulted from a "one time situational domestic Incident." ECF No. 97 at 6.

2018 are among the most serious that come before it. They, and Defendant's criminal history as a whole, demonstrate a complete disregard for the law and the safety of others. Releasing Defendant from prison at this time would detract not only from the seriousness of his offenses, but also from the long-lasting trauma Defendant afflicted on A.L.K. and her family.

Defendant's reply also reflects a denial of reality and a complete refusal, or perhaps inability, to accept responsibility for his actions. He claims that it was A.L.K.'s daughter, not him, who destroyed their "dreams" by "ma[king] up lies." ECF No. 97 at 6–7. He also severely mischaracterizes the offense by describing it as a "one time situational domestic Incident." *Id.* at 6. He writes of his relationship with A.L.K. in the present tense, stating that they "have been together for four years." *Id*. at 6. These assertions are ludicrous and reflect delusion.

The Court is seriously concerned that it would be putting the public at risk by releasing Defendant. His violent criminal history, plus his unwillingness to accept responsibility for his actions, present sufficient basis for this concern. Additionally, violent offenders such as Defendant are statistically more likely to reoffend compared to non-violent offenders.[8]

Lastly, the Court has no reason to believe that Defendant will receive any more consistent treatment for his ailments outside of prison. For these reasons, the Court will deny Defendant's motion for compassionate release.

---

[8] *See Recidivism Among Federal Violent Offenders*, UNITED STATES SENTENCING COMMISSION, https://www.ussc.gov/research/research-reports/recidivism-among-federal-violent-offenders (last visited May 9, 2023) ("[O]ffenders who engaged in violent criminal activity—whether during the instant federal offense or as part of prior criminal conduct—generally recidivated at a higher rate, more quickly, and for more serious crimes than non-violent offenders.").

5.  **CONCLUSION**

Defendant has not met the burden for appointment of counsel. And in any event, the Court would be constrained to deny Defendant's motion for compassionate release even if Defendant had presented it to the Court through counsel. Consideration of the sentencing factors demonstrates that Defendant is unequivocally unfit to be released from prison. As enunciated by the victim of Defendant's kidnapping, rape, and harassment, "[I] am not the first woman that he has done this to. There is no reason to believe why I would be the last." ECF No. 71 at 28. Therefore, the Court will deny Defendant's motions for counsel and for compassionate release.

Accordingly,

**IT IS ORDERED** that Defendant Wayne Grills's ("Defendant") motion to appoint counsel, ECF No. 88, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's motion to amend motion for compassionate release, ECF No. 83, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant's combined motions for extension of time to file and to appoint counsel, ECF No. 96, be and the same are hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Defendant's motion for compassionate release, ECF No. 81, be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 22nd day of May, 2023.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge